UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN STEINBERG, | ) | CIVIL ACTION NO. 1:21-CV-1652 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| PENNSYLVANIA STATE BOARD | ) | |
| OF PHARMACY, *et al*., | ) | |
| Defendants | ) | |

MEMORANDUM OPINION
*The Commonwealth Defendants' Motion to Dismiss (Doc.27)*

## I.   INTRODUCTION

The Commonwealth revoked Norman Steinberg's license to practice pharmacy after he plead guilty to a federal crime. In turn, Mr. Steinberg filed this civil rights suit, alleging that the administrative proceedings were chock full of illegality, and that a dragnet of various actors conspired to violate his civil rights.

In turn, all the Commonwealth Defendants have moved to dismiss this case, arguing that they are all immune from suit, collateral estoppel applies, and Mr. Steinberg has failed to state to a plausible civil rights claim. I agree with the Commonwealth Defendants, and I will grant their Motion.

## II.   BACKGROUND AND PROCEDURAL HISTORY

This *pro se*, fee paid civil action began on September 27, 2021, when Norman Steinberg ("Plaintiff" or Mr. Steinberg) filed a Complaint. (Doc. 1). On January 5,

2022, Plaintiff amended his Complaint by right, so that is now the operative pleading. (Doc. 21). Plaintiff names the following individuals as defendants:

Members of the State Board of Pharmacy (collectively "Board Defendants"):

(1)   Thomas P. Carey
(2)   Theresa M. Talbott
(3)   Robert B. Frankil
(4)   Patrick M. Greene
(5)   Theodore Stauffer (Executive Secretary of the Bureau of Professional and Occupational Affairs)
(6)   K. Kalonji Johnson (Commissioner of the Bureau of Professional and Occupational Affairs)

Counsel for the State Board of Pharmacy, and former prosecutors for the State Board of Pharmacy (collectively "Prosecutor Defendants"):

(1)   Kerry E. Maloney
(2)   Juan A. Ruiz

Plaintiff's Former Attorney:

(1)   Charles S. Hartwell

As we are in the motion to dismiss stage, I will take all facts presented in the Amended Complaint as true. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). Plaintiff, a previously licensed pharmacist in Pennsylvania, was indicted in December 1999 by federal prosecutors in the Eastern District of Pennsylvania for violations of Controlled Substances Act. (Doc. 21, ¶ 20). Pursuant to a plea agreement, Plaintiff plead guilty for failing to maintain proper records for the

disposition of controlled substances, in violation of 21 U.S.C. § 843(a)(4)(A).[1] (*Id.* at ¶ 21). Because of his guilty plea, Plaintiff believed his pharmacy license would be automatically suspended for one year. (*Id.* at ¶ 25). However, the Pennsylvania State Board of Pharmacy (the "Board") or the Bureau of Professional and Occupational Affairs (the "Bureau") did not pursue disciplinary action. (*Id.* at ¶ 26).

Believing that his one year mandatory suspension had come and passed, Plaintiff reapplied on March 21, 2014, for a reinstatement of his pharmacy license. (*Id.* at ¶32). As part of his application, Plaintiff sent (1) his 2003 plea agreement, (2) a reactivation application, and a (3) a letter requesting reinstatement of his license. (*Id.*). The Board rejected his application and asked him to submit certified copies of his plea agreement and the judgment of the court. (*Id.* at ¶ 35). He did so, but the Board rejected his application again because the documents were not properly certified. (*Id.* at ¶ 38). So, Plaintiff sent his third application, but it was once again

---

[1] "From January 3, 1996, to April 30, 1997, [Plaintiff], trading as Chelten Pharmacy, violated the federal Drug Abuse Prevention and Control Law, 21 U.S.C. §§ 801-971, specifically Section 843(a)(4)(A) of the statute, when he knowingly or intentionally omitted material information from records required by law to be made, kept, and filed, including records of sale, delivery, or other disposition of approximately 410,000 tablets containing alprazolam, commonly known as Xanax, which is a Schedule IV controlled substance." *Steinberg v. Bureau of Prof'l and Occupational Affairs*, No. 681 C.D. 2020, 2021 WL 3642336, *1 (Pa. Commw. Ct. Aug. 18, 2021). The Court may take judicial notice of another court's memorandum opinion. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("[W]e noted that judicial proceedings constitute public records and that courts may take judicial notice of another court's opinions.").

rejected because Plaintiff had his court documents certified by the National Archives and not by the issuing Court. (*Id.* at ¶¶ 39-40). His fourth application was acceptable to the Board, and on November 27, 2015, the Board reinstated Plaintiff's license. (*Id.* at ¶ 42).

On July 11, 2016, a Commonwealth prosecutor from the Bureau issued a Show Cause Order, alleging that Plaintiff's license was subject to discipline pursuant to Section 5(a)(2) of the Pharmacy Act.[2] (*Id.* at ¶ 46). Mr. Steinberg claims that unspecified members of the Board forwarded his application to the prosecutor. (*Id.* at ¶ 107). Plaintiff then retained Charles Hartwell to represent him. (*Id.* at ¶ 50). Following a hearing, the hearing examiner recommended to the Board that Plaintiff's license be suspended, a more severe penalty than the prosecutor recommended. (*Id.* at ¶ 69). On October 17, 2017, the Board "agreed to revoke Plaintiff's license in executive session."[3] (*Id.* at ¶ 74). Almost three years later, on June 16, 2020, the Board unanimously voted to suspend Plaintiff's license. (*Id.* at ¶ 83).

Plaintiff, with Mr. Hartwell representing him, appealed the Board's decision to the Commonwealth Court. (*Id.* at ¶¶ 90-94). Plaintiff wanted Mr. Hartwell to raise a due process argument, but he did not do so. (*Id.*). The Commonwealth Court

---

[2] That law, codified in 63 P.S. § 390-5(a)(2), gives the Board the power to revoke or suspend a pharmacist's license if they have pleaded guilty "to any offense in connection with the practice of pharmacy. . . ."

[3] Defendants Talbot, Frankil, and Greene voted in favor to bring up Plaintiff's case before the full board. (*Id.* at ¶ 76).

affirmed the Board's decision. (*Id.*); *Steinberg v. Bureau of Prof'l and Occupational Affairs*, No. 681 C.D. 2020, 2021 WL 3642336, *1 (Pa. Commw. Ct. Aug. 18, 2021).

Based on these facts, Plaintiffs brings eight causes of action against various members of the Board or its counsel. They are: (1) a 42 U.S.C. §§ 1983, 1985 claim that when the Board forwarded his 2014 application to prosecutors, they deprived him of an impartial tribunal, (2) a Section 1985 conspiracy claim that the Board participated in a coverup to conceal their collusion with the prosecutor, (3) a Section 1983 claim that the Board's counsel (Ruiz and Maloney) were former prosecutors in the Bureau in 2005, so their advisory role to the Board during his future disciplinary hearings violated due process, (4) a Section 1983 claim that the Board participated in an intentional delay in adjudicating Plaintiff's case violating his right to due process, (5) a Section 1983 claim against the board for "abuse of process," (6) special punitive damages against Mr. Ruiz for his misrepresentation when he served as the attorney of record during Plaintiff's appeal to the Commonwealth Court, (7) a Section 1985 conspiracy claim against Stauffer and Johnson for their role in hindering his due process rights, and (8) a Section 1983 claim against Defendants Talbott, Frankil, Carey, Greene, Ruiz, Maloney for discriminating against him in violation of the Equal Protection Clause. (*Id.* at ¶¶ 103-93).

On February 19, 2022, the Commonwealth Defendants filed a Motion to Dismiss for Failure to State a Claim. (Doc. 27). They filed their Brief in Support on

March 3, 2022. (Doc. 28).  On April 15, 2022, Plaintiff filed his Brief in Opposition. (Doc. 35). The Commonwealth Defendants filed a Reply Brief on April 26, 2022. (Doc. 34). Thus, this Motion is ripe for review.

III.   THE MOTION TO DISMISS STANDARD

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and ultimately determine whether Plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In review of a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothchild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most

favorable to the plaintiff. *Id.* The court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that the [plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three-step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where they are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminister Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the Court of Appeals has observed:

> The Supreme Court in *Twombly* set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint which pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Burch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011).

IV. DISCUSSION

The Commonwealth Defendants attack Plaintiff's Amended Complaint by arguing that (1) the Board Defendants lacked personal involvement, (2) the Board Defendants are entitled to absolute quasi-judicial immunity, (3) the Prosecutorial Defendants are entitled to absolute prosecutorial immunity, (4) Plaintiff's official capacity claims against the Commonwealth Defendants are barred by claim preclusion, (5) there is no cause of action under the Pennsylvania Constitution, and (6) Plaintiff's claims fails as a matter of law. To decide this case, I only need to discuss the last five arguments put forth by the Commonwealth Defendants. I'll discuss each in turn.

A.     THE BOARD DEFENDANTS ARE IMMUNE

The Board Defendants argue that they are personally immune with quasi-judicial absolute immunity because their actions are "functionally comparable to that of a judge."[4] (Doc. 28, p. 8). Plaintiff counters by arguing the Board Defendants lacked personal jurisdiction over this case because they had to recuse themselves, thus invoking an exception to judicial immunity. (Doc. 35, pp. 14-16). On this point, I agree with the Board Defendants: they are protected by absolute, quasi-judicial immunity.

"Quasi-judicial immunity attaches to public officials whose roles are functionally comparable to that of a judge." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (internal quotations and citations omitted). "Regardless of his job title, if a state official must walk, talk, and act like a judge as part of his job, then he is as absolutely immune from lawsuits arising out of that walking, talking, and acting as are judges who enjoy the title and other formal indicia of office." *Dotzel v. Ashbridge*, 438 F.3d 320, 325 (3d Cir. 2006). Someone with

---

[4] K. Kalonji Johnson is the Commissioner of the Bureau and by statute, is a member of the Board. Further, Johnson "executed the Final Adjudication on June 22, 2022, on behalf of the [Bureau]." (Doc. 21, ¶ 10). Likewise, Theodore Stauffer, the Executive Secretary of the Bureau "voted to adopt the Board's Final Adjudication . . . ." (*Id.* at ¶ 17). Plaintiff further alleges that both Johnson and Stauffer "endorsed [the Board's] Final Order." (*Id.* at ¶ 179). Therefore, all of Plaintiffs allegations against Johnson and Stauffer is in their capacity as board members, a delegated board member, or as an official who ratified the Board's Order.

Case 1:21-cv-01652-WIA   Document 39   Filed 07/18/22   Page 10 of 21


quasi-judicial immunity is absolutely immune from money damages in their personal capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Members of professional licensing boards, when acting as a body to regulate and discipline members of their profession, are afforded quasi-judicial immunity. *See, e.g.*, *Frankel v. Disciplinary Bd. of the Sup. Ct. of Pa.*, No. 05-cv-1450, 2005 WL 2994354, at * 7 (E.D. Pa. Nov. 8, 2005) (affording immunity to legal disciplinary body); *Camas v. Dickson-Witmer*, No. 97-cv-245, 2001 WL 34368388, at * 11-13 (D. Del. Mar. 30, 2001) (same, applied to medical board); *Glunk v. Pa State Bd. Of Med.*, 687 F. App'x 196, 202 (3d Cir. 2017) (same, applied to a professional licensing board hearing officer); *Duncan v. Miss. Bd. Of Nursing*, 982 F. Supp. 425, 433-34 (S.D. Miss. 1997) (same, applied to nursing board). This makes sense, as the State Board of Pharmacy, exercises the traditional traits of a judge. Plaintiff's licensing proceedings were adversarial and had procedural and appellate safeguards. Further, the Board is insulated from political influence as only two of the seven members of the Board are political appointees,[5] while the rest of the board are appointed by the Governor and confirmed by the Senate to term limited positions. 63 P.S. §§ 390-6(a)-(c).

_____

[5] By mandate, the Commissioner of the Bureau of Professional and Occupational Affairs and the Director of the Bureau of Consumer Protection in the Office of Attorney General are members of the State Board of Pharmacy. They are appointed by the Governor and by the Attorney General, respectively, without Senate approval. 71 P.S. § 279.1 (Commissioner); 71 P.S. § 307-1 (Director of Consumer Protection).

Plaintiff argues that the Board acted without jurisdiction, and therefore, judicial immunity is inapplicable.[6] (Doc. 35, p. 14). Plaintiff claims that *Williams v. Pa.*, 579 U.S. 1 (2016) stands for the holding that when a tribunal is tainted by bias, that deprives it of jurisdiction. (Doc. 35, p. 14 ("When a juror knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction [i.e., *Williams v. Pa.*], judicial immunity is lost.")). That is a mistaken understanding of *Williams*. That case required the Chief Justice of the Pennsylvania Supreme Court to recuse himself in a habeas corpus case because he was the former District Attorney who explicitly authorized his office to seek the death penalty. *Williams*, 579 U.S. at 11, 16. *Williams* only speaks to recusal; it does not stand for the proposition that the Chief Justice is amenable to suit for civil rights violations for failing to recuse himself.

In sum, the Board Defendants are absolutely immune from civil liability in the personal capacities. They will be dismissed from this action.

B.   PLAINTIFF CANNOT SEEK RELIEF AGAINST COMMONWEALTH DEFENDANTS IN THEIR OFFICIAL CAPACITIES

The Commonwealth Defendants argue that Plaintiff's official capacity claims must be dismissed because claim preclusion bars them. (Doc. 28, pp. 12-13).

---

[6] I believe Plaintiff is attempting to invoke one of the exceptions to judicial immunity, as a judge who acts "in the complete absence of all jurisdiction" is not immune for that act. *Mireles v. Waco*, 502 U.S. 9, 12 (1991).

Plaintiff counters that the parties in this present case are different (because Charles Hartwell is a party), and thus claim preclusion does not apply. (Doc. 35, p. 26). On this point, I agree with the Commonwealth Defendants – claim preclusion applies to the Commonwealth Defendants sued in their official capacities.

Courts seek finality in their decisions. That underpins the doctrine of claim preclusion, "a defense asserted when a case is essentially identical to the one that has previously been adjudicated." *R&J Holding Co. v. Redevelopment Auth.*, 670 F.3d 420, 426 (3d Cir. 2011). "To determine the effect of a Pennsylvania court judgment, [a federal court is] required to apply Pennsylvania's claim- and issue-preclusion law."[7] *Id.* at 426. Under Pennsylvania law, for claim preclusion to apply to a successive action, the cases must share "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." *Id.* at 427. Claim preclusion applies not only to the claims actually litigated, but "to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Id.* (citing *Balent v. City of Wilkes-Barre*, 669, A.2d 309, 313 (Pa. 1995)). So, when applying claim

---

[7] This requirement stems from the Full Faith and Credit Act, which requires that all judgments from state or federal courts "shall have the same full faith and credit in every court within the United States. . . ." 28 U.S.C. § 1738. So, a federal court must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982).

preclusion, courts look at "the essential similarity of the underlying events giving rise to the various legal claims," and not the "specific legal theory invoked." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006) (citing *McArdle v. Tronetti*, 627 A.2d 1219, 1222 (Pa. Super. Ct. 1993)). Finally, claim preclusion only applies to "a final judgment upon the merits of a court of competent jurisdiction." *Allegheny Intern., Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir. 1994).

As applied here, claim preclusion applies. Plaintiff could have raised his due process and equal protection claims before the Commonwealth Court but failed to do so. *See Glunk v. Pa State Bd. Of Med.*, 687 F. App'x 196, 203 (3d Cir. 2017) (applying claim preclusion to plaintiff's procedural due process claim against the State Board of Medicine because of a final decision in the Commonwealth Court). The inclusion of Charles Hartwell in this case does not bar claim preclusion's applicability, as the Court is only applying claim preclusion to claims against Commonwealth Defendants. Therefore, any official capacity claim will be dismissed.

C.   DEFENDANTS RUIZ AND MALONEY ARE SUBJECT TO PROSECUTORIAL IMMUNITY FOR SOME OF PLAINTIFF'S CLAIMS

With all the Board Members dismissed, that leaves the Court with two remaining defendants: Juan Ruiz and Kerry Maloney.

The Commonwealth Defendants argue that Defendants Ruiz and Maloney are protected by prosecutorial immunity. (Doc. 28, pp. 10-12). Plaintiff argues that prosecutorial immunity does not apply to them because they are not being sued for their prosecutorial acts. Rather, he argues they are "**former** prosecutors in the matter in 2005," and therefore "both counsels lacked personal jurisdiction to take part in the adjudicatory phase of the prosecution." (Doc. 35, pp. 17-18) (emphasis in the original). Thus, Plaintiff argues, Ruiz and Maloney are not protected by prosecutorial immunity. On this point, I agree with the Commonwealth Defendants, they are protected by prosecutorial immunity for Counts Three and Seven of Plaintiff's Amended Complaint.

Generally, immunity takes two forms: absolute immunity and qualified immunity. Although most public officials are entitled only to qualified immunity, officials like prosecutors are entitled to absolute immunity for the performance of certain "special functions." *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006). However, "[t]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991). The Third Circuit has explained, to meet this burden, a prosecutor must show:

> that he or she was functioning as the state's advocate when performing the action(s) in question. This inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. Under this functional approach, a prosecutor enjoys absolute immunity

for actions performed in a judicial or quasi-judicial capacity. Thus, immunity attaches to actions intimately associated with the judicial phases of litigation, but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.

*Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008) (internal citations and quotations removed).

Given this standard, Counts Three and Seven of Plaintiff's Amended Complaint should be dismissed. Count Three complains that Maloney and Ruiz "decided to forgo prosecuting the license under the Drug Act [in 2005], electing instead to wait until Plaintiff renewed his license to prosecute the license under the harsher Pharmacy Act . . . ." (Doc. 21, ¶ 132). Plaintiff then states that when Ruiz and Maloney became Board counsel, they drafted the final adjudication on behalf of the Board defendants. (*Id.* at ¶¶ 134-35). In this count, Plaintiff is ultimately complaining of a prosecutorial act: the decision and timing of when to prosecute a case. Therefore, prosecutorial immunity apples to this count, and it will be dismissed.

In Count Seven, Plaintiff complains that Mr. Ruiz made material misrepresentations in his brief to the Commonwealth Court. (Doc. 21, ¶¶ 156-76). Because of these misrepresentations, he argues that Mr. Ruiz should be subject to "Rule 9(g)" and be assessed punitive damages. (*Id.*). However, these alleged misrepresentations were made in his role as "the state's advocate" in a judicial proceeding. Misrepresentations, and even the withholding of evidence, if done while

preparing or during judicial proceedings, is covered by prosecutorial immunity. *Zahl*

*v. N.J. Dep't of Law & Pub. Safety*, No. 06-cv-3749, 2008 WL 816821, at * 67-69

(D.N.J. Mar. 26, 2008). Therefore, Count Seven will be dismissed.

Commonwealth Defendants assert that Defendants Ruiz and Maloney should

also be subject to prosecutorial immunity for the other claims in Plaintiff's Amended

Complaint. However, I believe that in those claims, Plaintiff is asserting causes of

actions as their roles as Counsel to the Board, not as prosecutors.[8] Therefore, I

decline to apply prosecutorial immunity for Plaintiff's other claims against them.

D.    THERE IS NO CAUSE OF ACTION FOR CIVIL RIGHTS UNDER THE
      PENNSYLVANIA CONSTITUTION

The Commonwealth Defendants construed Plaintiff's Amended Complaint to

potentially allege a cause of action under the Pennsylvania Constitution. To the

extent Plaintiff is trying to recover money damages based on violations of the

Pennsylvania Constitution, he cannot succeed. There is no private cause of action

under the Pennsylvania Constitution. *Jones v. City of Phila.*, 890 A.2d 1188, 1215-

16 (Pa. Commw. Ct. 2006) (declining to create a new cause of action for money

damages for violations of Article I, Section 8 of the Pennsylvania Constitution and

observing "[t]o date, neither Pennsylvania statutory authority nor appellate case law

---

[8] As counsel to the Board, Ruiz and Maloney would likely be subject to judicial
immunity, as they "perform[ed] functions closely associated with the judicial
process." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988).

has authorized the award of monetary damages for a violation of the Pennsylvania Constitution."). So, to any extent Plaintiff is seeking money damages for violations of the Pennsylvania Constitution, it fails.

    E.    PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

At this point, the only remaining defendants and claims are a Section 1983/1985 claim for conspiracy to deprive Plaintiff of an impartial tribunal against Ruiz and Maloney, a Section 1985 claim for "hindering and obstructing the due course of justice" against Ruiz and Maloney, a Section 1983 claim for denial of due process by intentional delay against Maloney, a Section 1983 claim for denial of procedural due process against Maloney, and a Section 1983 claim against Ruiz and Maloney for denial of equal protection.

These remaining claims can be distilled into two flavors: due process claims, and an equal protection claim. Each type of claim fails.

    1.    Due Process Claims

The loss of a professional license triggers the Fourteenth Amendment's due process protections. Due process only requires "a post-deprivation hearing and appeal process . . . ." *Doheny v. Commonwealth*, 781 F. App'x 106, 113 (3d Cir. 2019). Further, "to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her." *Id.* (citing *Elsmere Park Club, LP v. Town of Elsmere*, 542 F.3d 412, 423 (3d Cir. 2008))

(cleaned up). The "failure to take advantage of that process means that [a plaintiff] cannot claim a constitutional injury." *Id.*

In this case, Plaintiff received a pre-deprivation hearing and undertook an appeal to the Commonwealth Court. And while the Commonwealth Court did not rule on any due process issues, it's because Plaintiff did not raise a due process claim. If he had, he would have received a *de novo* review of his claim before the Commonwealth Court. *Nelson v. State Bd. Of Veterinary Med.*, 863 A.2d 129, 132 n.4 (Pa. Commw. Ct. 2004) ("The Court's review of the Board's adjudication is whether the Board violated constitutional rights . . . "). Therefore, he cannot assert a due process claim in this Court now.

Plaintiff complains that he could not have exercised his due process rights because his lawyer failed to raise a due process claim to the Commonwealth Court, and Mr. Ruiz lied in his brief in the Commonwealth Court. (Doc. 35, p. 21-22). Plaintiff has not cited any authority on whether these excuses default, and thus permits a due process claim to continue. Regardless, Plaintiff's claims appear to be better suited as a legal malpractice claim instead of a civil rights claim. If Plaintiff felt strongly about including a due process claim in his opening brief to the Commonwealth Court, he could have found another lawyer. Further, if Mr. Ruiz did lie in his brief, Plaintiff does not allege that he or his lawyer challenged Mr. Ruiz's allegations.

2.    Equal Protection Claim

The Commonwealth Defendants argue that Plaintiff's equal protection claim (Count 9) fails because Plaintiff failed to assert factual allegations that he was treated differently, or irrationally. (Doc. 28, p. 15). Plaintiff counters that there are other similarly situated pharmacists who were not "singled out for an invidious prosecution . . . [or] have to wait over three years for a final adjudication." (Doc. 35, p. 12). Plaintiff also lists the perceived wrongs in his administrative process and argues that it is evidence that the Commonwealth Defendants "intended to treat Plaintiff differently." (Doc. 35, p. 13). On this point, I agree with the Commonwealth Defendants, Plaintiff has not plead an adequate equal protection claim.

Traditionally, equal protection claims are based on a plaintiff's membership in a protected class. However, the Supreme Court ruled that plaintiffs can pursue these claims under a class of one theory, where "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (citing *Village of Willowbrook v. Plech*, 528 U.S. 562, 564 (2000)).  Pleading requirements for a class of one equal protection claim are exacting, and a plaintiff must identify "similarly situated" individuals who "are alike in all relevant aspects." *Patterson v. Strippoli*, 639 F. App'x 137, 142 (3d Cir. 2016).

Here, Plaintiff has not sufficiently plead a class of one equal protection claim. Rather, in his Amended Complaint, Plaintiff listed all the perceived wrongs in his administrative proceedings, and conclusory asserts that the Defendants "discriminated against Plaintiff as opposed to other licensees . . . ." (Doc. 21, ¶¶ 185-92). Without more allegations, this cannot sustain a class of one allegation. First, he has not plead enough factual allegations that "other licensees" are similarly situated from him in all relevant aspects. [9] Second, he has plead no facts to support that there was no rational basis for him to be treated differently than "other licensees." Therefore, Plaintiff's equal protection claim (Count Nine) should be dismissed.

F.     FURTHER LEAVE TO AMEND WOULD BE FUTILE

"[I]f a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). In this case, Plaintiff already filed an Amended Complaint, but it failed to state a claim upon

---

[9] While not in his Amended Complaint, Plaintiff, in his Brief in Opposition, argues that the hearing examiner's "POA" referenced four other pharmacists who are "similarly situated whose license had been prosecuted under the Pharmacy Act, who had been convicted of misdemeanors related to their practice of pharmacy, yet none were singled out for an invidious prosecution as the Plaintiff was, nor did any of the four licensees have to wait over three years for a final adjudication." (Doc. 35, p. 12). However, this was not alleged in the Amended Complaint, and because Plaintiff cannot amend his pleadings with a brief, the Court will not consider it. *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

which relief can be granted. Given the Court's understanding of the factual basis for Plaintiff's claims, granting further leave to amend would be futile.

IV.    CONCLUSION

Plaintiff has not asserted a cognizable claim against the Commonwealth Defendants. Their Motion to Dismiss will be granted; an appropriate Order will follow.

Date: July 18, 2022                              BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge